### B. D. BYRNE v. J. T. ROBISON, COMMISSIONER, ETC.

No. 1953.    Decided November 17, 1909.

**1.—School Land—Mandamus—Parties.**

To an action for mandamus against the Commissioner of the General Land Office requiring reinstatement of relator as a purchaser of school land, under the Act of April 15, 1905, the award of the land to him having been improperly cancelled, the adverse claimant, though a proper party, is not clearly a necessary one. The fact that it appeared from the return of citation against him that he was not found in the county indicated that he had abandoned or sold the land, and plaintiff was permitted to dismiss as to him and to take judgment, without prejudice to his rights, against the Land Commissioner for the mandamus sought. (P. 21).

**2.—School Land—Competitive Bids—Transmission by Mail.**

A bidder for school land, under the Act of April 15, 1905, Laws 29th Leg. p. 159, whose application to purchase, complying with the law, was the only bid for that tract on file with the Commissioner on the day set for opening bids, was entitled to the award; the application of another, offering more, was not entitled to be considered, though mailed in time to have reached the Land Commissioner by that day, and though the failure of the latter to receive it in time for consideration was caused by the absence of the employe of the Land Office whose business it was to receive and receipt for the registered mail; and the Land Commissioner was without authority, on receipt of the higher bid after the day set, to cancel the first award and accept such better offer. (Pp. 21, 22).

Original application to the Supreme Court for writ of mandamus against the Commissioner of the General Land Office.

*E. Cartledge,* for relator.

*R. V. Davidson,* Attorney-General and *Wm. E. Hawkins,* Assistant, for respondent Robison.

MR. CHIEF JUSTICE GAINES delivered the opinion of the court.

This is a petition for the writ of mandamus to compel J. T. Robison, as Commissioner of the General Land Office, to reinstate relator as purchaser of Section 349 in Block 2, Certificate 1/466, Texas & Pacific Railway Company, for 640 acres, being a section of the Public Free School Lands of the State.

It is alleged in the petition that the section in controversy had been appraised at $1.50 per acre and had been advertised for sale on August 1, 1908; that on July 18, 1908, the relator made application to purchase said section as additional lands to his home tract. He wrote out his application together with the obligation for the installment of 39/40ths of the purchase money and enclosed them in an envelope endorsed as required by the statute, and before the first day of August, 1908, paid into the State Treasury 1/40th of the purchase money. His bid was $2.30 per acre. This being the only bid received by the Commissioner at 10 A. M., August 3, 1908, (August 2 being Sunday) the land was awarded to relator and he was notified of its acceptance. Mrs. Nannie May Williams, however, put in a bid for the land in July, 1908, and mailed it in accordance with law. The papers reached the Post Office in Austin in due time; but for absence of an employe of the Land Office, whose business it was to convey the mail from the Post Office to the Land Office, it did not reach the Commissioner of the General Land Office until August 4, 1908. Thereupon the Commissioner reconsidered his action and, at a subsequent day, canceled the award to the relator and awarded the purchase to Mrs. Williams.

Mrs. Williams and her husband are made parties to the suit, but process sent to Presidio County has been returned by the officer with the statement that they could not be found in that county. The relator has submitted the case with the understanding that if they are not considered necessary parties the suit may be dismissed as to them. That they are proper parties there can be no doubt; but that they are necessary parties is not so clear. But from the fact that the return of the sheriff upon the citation to them shows that they were not found in the county at the time of its attempted service, indicates that they had either abandoned their purchase or sold their rights, we with some reluctance conclude that they are not necessary parties, and therefore dismiss the suit as to them. They will not be affected by the judgment in this case.

The scheme of the Act of April 15, 1905, (under which the transaction in controversy was had), was to sell the unsold school lands to the highest bidder. In order to accomplish this, bidders were required to make application in the terms of the Act and to enclose the same in envelopes, addressed to the Commissioner of the General Land Office, with certain endorsements thereon, offering to buy the land, giving the amount of the bid and with certain other prerequi-

sites prescribed by law. The envelopes were to remain in the Land Office unopened until the day next after that named as the day of sale and at ten o'clock of that day were to be opened and the land was to be awarded to the highest bidder therefor. The language is peremptory and absolute. There is no provision for a delayed application, from whatever cause the delay may arise. The idea of the Legislature seems to have been to have the applications all in by a certain day, and that from those that were on file the Commissioner should determine who was entitled to the land and make his award. Those that were not on file could not be considered, and no provision is made for re-opening the matter and considering them thereafter. Was this wise? The State is desirous of selling the school lands. It owes no duty to any individual to sell it to him. It gives every one a fair chance to bid, and this is all that is required. Ample time is afforded to allow one not only to mail his application, but to see that it has been received in the Land Office. For example, in the present case, Mrs. Williams could have ascertained that her application had not been received in the Land Office by August 1, 1908, and could have informed the Commissioner that it was mailed in time to have been there. Then on inquiry at the Post Office, either by a messenger from the Land Office, or by herself, or her agent, the necessary package would have been found and would have been delivered in time. Is it better not to consider an application not filed in time, or to consider it with the additional question whether the delay was caused by fault of the applicant or not? We think the Legislature was of the opinion that the applications on file at ten o'clock on the day after the day of sale should only be considered, and that the highest bidder among them should be entitled to buy the land.

Our conclusion is that the land was properly awarded to the relator and that having been so awarded the Commissioner was without power to set it aside.

The mandamus prayed for is therefore awarded.

*Mandamus awarded.*